# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| THOMAS D. ARTHUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 17-0221-WS-B |
| | ) |
| JEFFERSON DUNN, COMMISSIONER, | ) |
| ALABAMA DEPARTMENT OF | ) |
| CORRECTIONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on *sua sponte* review of the court file.

Late in the afternoon of May 16, 2017, plaintiff, Thomas D. Arthur, filed a Complaint (doc. 1) and an Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction and Request for an Emergency Hearing (doc. 5) in this District Court.[1] Arthur is an Alabama death row inmate scheduled to be executed on May 25, 2017. He brings this action and petition for emergency injunctive relief pursuant to 42 U.S.C. § 1983, claiming that the State of Alabama's method of execution violates and threatens to violate his rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the U.S. Constitution. The Complaint is centered on what Arthur calls "the State's intent to execute Mr. Arthur using a method the State knows will cause pain." (Doc. 1, at 1.) Upon careful review, the Court finds that the Complaint fails to state a claim upon which relief can be granted.

## I. Procedural History.

This brand-new action is not Arthur's first § 1983 challenge to the State's execution protocols, nor his second or even his third. It is his fourth. On November 2, 2016, the Eleventh

---

[1] The undersigned first became aware of the existence of this action on the afternoon of May 17, 2017, upon notification by the Clerk of Court that it had been assigned to the undersigned's docket.

Circuit Court of Appeals documented Arthur's protracted history of § 1983 method-of-execution litigation in the federal courts as follows:

> "[S]tarting nine years ago in 2007 and on three separate occasions, Arthur has filed civil lawsuits under 42 U.S.C. § 1983 challenging the drug protocol to be used in his execution. This is Arthur's third such § 1983 case, and this current § 1983 case was filed in 2011. For the last five years Arthur has pursued this § 1983 case with the benefit of lengthy discovery. The district court held a two-day trial and entered two comprehensive orders denying Arthur § 1983 relief."

*Arthur v. Commissioner, Alabama Department of Corrections*, 840 F.3d 1268, 1272 (11th Cir. 2016).

In his third § 1983 method-of-execution case, the one that was pending for five years while extensive discovery occurred and that culminated in a two-day trial, Arthur "raised an Eighth Amendment claim, alleging that the ADOC's use of midazolam as the first drug creates a substantial risk of serious harm because … there is a high likelihood that midazolam will fail to render [him] insensate from the excruciatingly painful and agonizing effects of the second and third drugs." *Id.* at 1276 (citations omitted).[2] In rejecting that claim, the Eleventh Circuit recognized that "in order to succeed on an Eighth Amendment method-of-execution claim, the Supreme Court has instructed that prisoners must demonstrate that the challenged method of execution presents a risk that is sure or very likely to cause serious illness and needless suffering,

---

[2] Notably, that five-year § 1983 method-of-execution litigation was brought by Arthur in the United States District Court for the Middle District of Alabama, not in this District Court. The Middle District of Alabama is well-versed in the details of Arthur's legal challenges to the State's execution protocol, having been involved in that matter until 2016, having presided over a trial of those issues, and having written multiple comprehensive orders addressing his claims for relief. Yet, barely one week prior to his scheduled execution date, Arthur chose to file his latest § 1983 action attacking the State's lethal injection protocol not in the Middle District of Alabama but in this District Court, where he last sought relief on a method-of-execution challenge back in 2008. While he correctly pleads in his Complaint that venue is permissible in this District Court pursuant to 28 U.S.C. § 1391, Arthur's decision to file this new emergency action (where time is of the essence) in a district other than the Middle District of Alabama (which is highly familiar with his method-of-execution challenges since 2011 and which ruled against him on all issues last year) smacks of forum-shopping. After all, the effect of plaintiff's strategic decision is to bypass the forum that had entered adverse rulings against him as to both facts and law in his 2011-2016 challenge to method of execution, and to select a forum that would be operating at a disadvantage in getting up to speed on the facts and law governing his claims (which might in and of itself favor his attempt to obtain a stay of execution while the Court orients itself to the applicable legal, factual and procedural landscape).

and give rise to sufficiently imminent dangers. … [T]he prisoner must demonstrate that the risk of severe pain is substantial when compared to the known and available alternatives." *Id.* at 1299 (citations, emphasis and internal quotation marks omitted). On that basis, the Eleventh Circuit affirmed the district court's denial of Arthur's facial Eighth Amendment challenge to ADOC's execution protocol because "Arthur has failed to show not only that compounded pentobarbital is an available alternative to the ADOC but also that ADOC's protocol creates a substantial risk of severe pain when compared to available alternatives." *Id.* at 1304. On November 3, 2016, just one day after the Eleventh Circuit affirmed the dismissal of Arthur's § 1983 complaint, the U.S. Supreme Court stayed his execution "pending further review." *Arthur v. Dunn*, 137 S.Ct. 15 (2016). On February 21, 2017, however, the Supreme Court denied Arthur's petition for writ of certiorari. *Arthur v. Dunn*, 137 S.Ct. 725 (2017). Two and a half months later, and a mere nine calendar days before his scheduled execution date, Arthur filed this new, fourth iteration of a § 1983 method-of-execution lawsuit in this District Court.

**II.   Analysis.**

Upon scrutiny of plaintiff's filings, the Court finds that Arthur's Complaint is procedurally improper and is therefore due to be dismissed for at least two independent reasons.

   *A.    Res Judicata.*

First, the present claims are barred by the doctrine of res judicata. It is well-settled, of course, that "a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). Res judicata requires that the following four elements be present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 20110 (citation omitted). If all of those elements are present, "[t]he court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies." *Piper Aircraft*, 244 F.3d at 1296.

There can be no reasonable dispute that the first three elements of res judicata are satisfied here. After all, Arthur's prior § 1983 action in the Middle District of Alabama attacking the constitutionality of the State's use of midazolam as the first drug in its execution protocol was litigated to a final judgment on the merits before a court of competent jurisdiction, and

included substantially identical parties to the present matter. Anticipating the res judicata defense, Arthur posits that the same cause of action is not at issue in both cases. (Doc. 6, at 14-15.) The Court disagrees. To be sure, Arthur is attempting to bring what he characterizes as a different Eighth Amendment claim against the State's use of a midazolam-based execution protocol in this case than the Eighth Amendment claim he directed at that same protocol in the 2011-2016 litigation in the Middle District of Alabama.[3] But res judicata extends beyond the precise claims litigated in the prior action and "bars the parties to a prior action from re-litigating a cause of action ***that was or could have been raised in that action***." *Maldonado*, 664 F.3d at 1377 (emphasis added and citation omitted). "[I]n order to determine whether two cases involve the same cause of action for res judicata purposes, we are obliged to look at the common nucleus of operative fact and ask what legal theories were used or could have been employed in the first proceeding. … A new claim is barred by res judicata if it based on a legal theory that was or could have been used in the prior action." *Id.*

Arthur insists that there is a different "nucleus of operative fact" in this case because his previous Eighth Amendment method-of-execution challenge "was dismissed before the Smith execution and other operative facts and events" (doc. 6, at 14), as documented in the pleading he filed yesterday. Arthur's present Complaint purports to rely on the State's execution of Ronald Bert Smith, Jr., on December 8, 2016 using the midazolam-based protocol. According to the Complaint, after midazolam was injected, Smith moved his head and limbs, coughed, attempted to speak, reacted to an arm pinch, and opened his eyes. (Doc. 1, ¶ 4.) Arthur's Complaint also cites evidence that Arkansas implemented a similar protocol in carrying out the execution of Kenneth D. Williams several weeks ago, and that Williams coughed and jerked after being injected with midazolam. (*Id.*, ¶ 6.) According to the Complaint, unspecified "[a]dditional recent executions in other states using midazolam have similarly resulted in painful deaths." (*Id.*) The Complaint alleges that "[a]s a result of these executions, the ADOC now has actual

---

    [3]    Indeed, Arthur would distinguish the claims in his Complaint by indicating that his previous § 1983 method-of-execution challenge was an Eighth Amendment claim that the State's protocol has "an objectively intolerable risk of harm when compared to an alternative that is feasible," which "does not require any showing of intent." (Doc. 1, ¶ 33.) By contrast, Arthur says, his Eighth Amendment claim against the same protocol in this action is that the State "plan[s] to execute Mr. Arthur using a method it *knows* will cause prolonged, excruciating pain." (*Id.*, ¶ 8.)

knowledge that its protocol is likely to produce an agonizing execution – and yet it intends to execute Arthur using the same protocol." (*Id.*, ¶ 7.) Thus, Arthur's contention is that res judicata does not apply because his Complaint in this case is relying on these new, previously unavailable facts about executions post-dating the dismissal of his previous § 1983 complaint challenging Alabama's execution protocol on Eighth Amendment grounds.

The fundamental defect in plaintiff's attempt to circumvent the preclusive effect of res judicata is that there is nothing new or different about these "new" factual allegations. To the contrary, Arthur and other inmates have long been filing pleadings in § 1983 method-of-execution challenges citing factual allegations relating to "botched executions" where midazolam has purportedly not had the anticipated or expected anesthetic effect of rendering the inmate unconscious. For example, in the Third Amended Complaint he filed in the Middle District of Alabama on October 13, 2015, Arthur set forth in some detail factual allegations that "[f]our recent executions demonstrate that … midazolam will fail to anesthetize adequately the inmate." (Case 2:11-cv-00438-WKW-TFM, M.D. Ala., doc. 267, at ¶ 103.) In that 2015 pleading, Arthur documented the following allegations: (i) in October 2013, Florida executed William Happ with a midazolam-based protocol, but Happ "made an unusual number of body movements after being administered with midazolam" (*id.*, ¶ 104); (ii) in January 2014, Ohio executed Dennis McGuire, who "struggled, made guttural noises, gasped for air and choked" for 10 minutes after being injected with midazolam (*id.*, ¶ 105); (iii) in April 2014, Oklahoma executed Clayton Lockett, who "began to writhe and gasp" and said "oh, man" after being injected with midazolam (*id.*, ¶ 106); and (iv) in July 2014, Arizona executed Joseph Wood, who "gasped for air over 600 times" after being injected with midazolam (*id.*, ¶ 107).

The "other executions" factual allegations in Arthur's present Complaint are of similar substance and tenor as those set forth in the pleadings of his prior method-of-execution lawsuit in the Middle District of Alabama. Arthur does not identify anything different about the Smith execution, the Williams execution, or the unspecified "[a]dditional recent executions in other states using midazolam" in terms of the effects of the drug on the inmate, the observed reactions or movements of the inmate, the result of the execution and the like. To the contrary, the purportedly "botched executions" giving rise to Arthur's current Complaint are simply more of the same, a continuation of substantially similar factual allegations set forth in his pleadings in his previous Eighth Amendment challenge to Alabama's method of execution. As such, the

Court readily concludes that the factual predicate of the two actions is factually indistinguishable, such that Arthur could have raised his "intent"-based Eighth Amendment theory in the prior action. The same cause of action is involved in both cases. Arthur could have raised his Eighth Amendment "intent" theory in his prior method-of-execution lawsuit. As such, the claims presented in his current complaint are barred by res judicata.[4]

### B.   *Laches / Specialized Equitable Principles.*

Second, Arthur's present Complaint is procedurally improper under laches and specialized equitable principles. Arthur commenced this action at the close of business on May 16, 2017, a scant nine days before his scheduled execution date of May 25, 2017. His Complaint did not reach the undersigned's desk until the afternoon of May 17, 2017. He asks for this Court to "order an expedited briefing schedule," conduct "an evidentiary hearing," and "[e]njoin

---

[4] In his current Complaint, Arthur does not distinguish among the Smith execution in Alabama, the Williams execution in Arkansas, or the "[a]dditional executions in other states using midazolam" for purposes of identifying the source of the State's purported knowledge that a midazolam-based protocol causes pain and suffering. Rather, he alleges that "[a]s a result of ***these executions***, the ADOC now has actual knowledge that its protocol is likely to produce an agonizing execution." (Doc. 1, ¶ 7 (emphasis added).) There is no suggestion, for example, that the State of Alabama was unaware of the painful effects of a midazolam-based execution protocol until it carried out the Smith execution in December 2016; rather, Arthur alleges that the collective experience of various jurisdictions using midazolam-based protocols informs the State of Alabama's purported "knowledge." That being the case, the executions identified in Arthur's October 2015 pleading in the prior lawsuit could and should have given the State the same "knowledge" on which his current claims are predicated. Even if Arthur's theory of liability in this case were that the State of Alabama did not know of midazolam's shortcomings until it experienced a "botched execution" using that procedure firsthand (which he has neither alleged nor articulated), he still could not avoid res judicata. After all, as Arthur is well aware, the State of Alabama executed Christopher Brooks on January 21, 2016 using the midazolam-based protocol, and a witness reported seeing Brooks open his eyes well after midazolam was injected. (Case No. 16-0473-WS-B, S.D. Ala., doc. 1, ¶¶ 2, 54-61.) The Brooks execution took place nearly three months before the Middle District of Alabama dismissed Arthur's Eighth Amendment claim; therefore, Arthur's contention that res judicata is inapplicable because his current theory was "not otherwise available at the time of the prior proceeding" (doc. 6, at 14-15) is demonstrably incorrect, even if the Court were to accept the (unarticulated by Arthur) premise that the State of Alabama lacked "actual knowledge" of the effects of a midazolam protocol until it conducted "botched executions" of its own using that protocol. The undersigned readily concludes that Arthur's ostensibly "new claims' herein are grounded in legal theories that were or could have been used in the prior action, and that were available to him at the time of the prior proceeding.

Defendants from executing Mr. Arthur with inadequate anesthesia and execution procedures that violate Mr. Arthur's right to be free from cruel and unusual punishment." (Docs. 5 & 6.)[5] Arthur's last § 1983 method-of-execution challenge took five years to resolve, yet he filed his new § 1983 action with less than ten days to spare before his execution date. Because of the unreasonably compressed temporal parameters resulting from Arthur's dilatory filing and presentation of these claims, either this entire case (from the filing of the Complaint through final judgment and all associated appeals) will need to be completed in eight days on an emergency / expedited basis, or his execution date will need to be stayed to allow sufficient time for adjudication and resolution of this action in its entirety. Plaintiff has thus needlessly placed this Court, the appellate courts, and the State in a terrible bind by waiting until the last possible moment to file this Complaint and to raise these claims, even though the factual grounds for those claims were known and available to him long before now.[6]

The Eleventh Circuit has taken a dim view of such last-minute strategic filings made by death-row inmates on the eve of execution, given their obvious ulterior motive of delaying the execution. *See, e.g., Grayson v. Allen*, 491 F.3d 1318, 1326 (11th Cir. 2007) ("If Grayson truly had intended to challenge Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an

---

[5] In his "Emergency Motion" for relief, Arthur states as his lead argument that "A STAY OF EXECUTION IS WARRANTED IN THIS CASE." (Doc. 6, at 10.) It is thus manifestly clear that he filed this action with the intent of obtaining an indefinite stay of his imminent execution date, while his latest constitutional theories of relief pertaining to Alabama's lethal injection protocol are litigated to conclusion.

[6] As noted, Arthur's present § 1983 action is rooted in what he calls "the State's intent to execute Mr. Arthur using a method the State knows will cause pain." (Doc. 1, ¶ 1.) The "method" in question has been the State of Alabama's announced protocol for conducting executions since September 2014. *See, e.g., Grayson v. Warden*, --- Fed.Appx. ----, 2016 WL 7118393, *2 (11th Cir. Dec. 7, 2016) ("Pentobarbital became unavailable in 2014. … Consequently, Alabama announced in September 2014 that it would begin using midazolam as the first drug in its lethal injection protocol.") (citations omitted). As for the State's "knowledge," presumably such knowledge would have come from the "botched executions" involving midazolam in 2013 and 2014 that Arthur recounted in his Third Amended Complaint in the Middle District of Alabama in October 2015, or (at the absolute latest) from the Christopher Brooks execution in January 2016. Yet Arthur inexplicably waited until mid-May 2017 to unveil this legal theory to the courts for the first time.

expedited litigation schedule.").[7] Where, as here, a plaintiff has engaged in such unreasonable delay, there is a strong presumption against the granting of dilatory equitable relief, and if the plaintiff cannot overcome such presumption, the district court has discretion as a matter of equity to dismiss the § 1983 action altogether. *See Arthur v. King*, 500 F.3d 1335, 1341 (11th Cir. 2007) ("In considering the dismissal of a § 1983 challenge, courts are to apply equitable principles which mandate dismissal when the plaintiff delayed unnecessarily in bringing the claim, … knowing full well that the discovery, evidentiary hearing, and decision on the merits that he demands could not possibly be accomplished within the short period of time between filing and the scheduled execution date.") (citations and internal quotation marks omitted).[8]

---

[7] *See also Ledford v. Commissioner, Georgia Dep't of Corrections*, --- F.3d ----, 2017 WL 2104682, *6 (11th Cir. May 15, 2017) ("Ledford's claims are barred because he has not timely made them, given he waited until five days before his execution" to challenge Georgia's lethal injection protocol, and "we must take into account the fact that the State and the relatives of Ledford's victims have a strong interest in the finality of the criminal judgments and in seeing lawfully imposed sentences carried out in a timely manner"); *Brooks v. Warden*, 810 F.3d 812, 826 (11th Cir. 2016) (denying relief on equitable grounds, given plaintiff's "unnecessary and unjustifiable delay in challenging Alabama's lethal injection protocol"); *Henyard v. Secretary, DOC*, 543 F.3d 644, 648 (11th Cir. 2008) ("[T]he district court did not abuse its discretion in concluding that Henyard is not entitled to a stay based on his undue delay in filing this § 1983 action on the eve of his execution and laches grounds. … As in other last-minute § 1983 challenges to lethal injection, laches bars Henyard's motion"); *Williams v. Allen*, 496 F.3d 1210, 1214 (11th Cir. 2007) ("Both the State and the victim's family have a strong interest in the timely enforcement of Williams's death sentence. … As such, if Williams were allowed to proceed on his § 1983 challenge in district court, the implementation of the State's judgment would be delayed by many months, if not years. Williams, in essence, would receive a reprieve from his judgment.") (citations omitted); *Jones v. Allen*, 485 F.3d 635, 640 (11th Cir. 2007) ("By waiting until November 2006 to file his challenge to the State's lethal injection protocol, Jones leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.") (citation and internal quotation marks omitted); *Rutherford v. McDonough*, 466 F.3d 970, 974 (11th Cir. 2006) ("The federal courts can and should protect States from dilatory … suits" or "suits … filed too late in the day.") (citations omitted); *Grayson,* 2016 WL 7118393, at *8 ("Smith has offered no reason for the delay, but if he truly had intended to challenge Alabama's lethal injection protocol, rather than simply delay his execution, he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule.") (citation and internal quotation marks omitted).

[8] *See also Williams*, 496 F.3d at 1215 ("We conclude that the district court did not abuse its discretion in dismissing Williams's § 1983 action due to his unnecessary delay, especially given the strong presumption against the grant of equitable relief."); *Grayson*, 491 (Continued)

Here, Arthur has not even attempted to overcome the strong presumption against the granting of equitable relief in these circumstances. He could have brought this particular action challenging Alabama's lethal injection protocol years ago, or at least no later than the Brooks execution in January 2016. He could have litigated his claim that the State intends to inflict gratuitous pain on him as part and parcel of his previous § 1983 method-of-execution lawsuit in the Middle District of Alabama from 2011 through 2016. Yet he did not. Instead, Arthur waited until barely a week before his scheduled execution date to assert this claim as part of a brand new § 1983 lawsuit, his fourth method-of-execution challenge in the last decade. Under these circumstances, the Court perceives no possible justification for Arthur's failure to bring this particular challenge earlier to allow sufficient time for full adjudication on the merits of his claim. Arthur bears sole responsibility for this unreasonable, unnecessary and inexcusable delay in bringing suit, which prevents his method-of-execution claim from being adjudicated without granting a stay of execution. He has not carried his burden to plead facts that might plausibly demonstrate entitlement to equitable relief under the facts and circumstances of this case. Therefore, even if this action were not barred by res judicata (which it is), dismissal would remain appropriate because of Arthur's unnecessary and unreasonable delay in filing his Complaint.[9]

---

F.3d at 1326 ("Given the strong presumption against the grant of dilatory equitable relief, we conclude that the district court did not abuse its discretion in dismissing Grayson's § 1983 action due to his unnecessary delay."); *Arthur v. Allen*, 248 Fed.Appx. 128, 132-33 (11th Cir. Sept. 17, 2007) ("There was no justification for Arthur's failure to bring his lethal injection challenge earlier to allow sufficient time for full adjudication on the merits of this claim. Accordingly, the district court's judgment of dismissal is AFFIRMED."); *Hallford v. Allen*, 634 F. Supp.2d 1267, 1275-76 (S.D. Ala. 2007) ("Hallford has unreasonably delayed in bringing this § 1983 action, and … a consequence of his unreasonable delay is that a final decision on the merits is not reasonably possible without entry of a stay of execution and/or an expedited litigation schedule. These circumstances trigger the 'strong equitable presumption' against the grant of injunctive relief. … Plaintiff having made no showing to rebut that presumption, dismissal is appropriate.") (citations omitted).

[9] In light of this Court's determinations that Arthur's claims are barred by both res judicata and the special equitable principles governing emergency § 1983 petitions filed by death-row inmates on the eve of execution for the purpose of delaying their execution dates, it is not necessary to address the merits of the Complaint. Nonetheless, the Court observes that the legal premise of Arthur's Eighth Amendment claim – namely, that a method-of-execution
(Continued)

---

challenge to the use of midazolam in a three-drug protocol is cognizable even in the absence of alternative methods where the State has "actual knowledge" that its method causes pain and suffering – appears devoid of legal support. Arthur attempts to sidestep his lack of evidence of a readily available alternative method of carrying out his execution (which ultimately defeated his previous method-of-execution challenge filed in the Middle District of Alabama) by blithely asserting that such proof "is not an element of Mr. Arthur's current claim." (Doc. 6, at 15.) In support of this theory, Arthur cites only concurring and dissenting opinions authored by specific Supreme Court justices. But Arthur's theory appears to fly in the face of the *Glossip* / *Baze* line of authorities. It does not appear that the Supreme Court or the Eleventh Circuit has <u>ever</u> recognized an Eighth Amendment method-of-execution challenge to a lethal injection protocol without proof by the plaintiff of a readily available alternative method. The Supreme Court has repeatedly recognized that "because it is settled that capital punishment is constitutional, it necessarily follows that there must be a constitutional means of carrying it out." *Glossip v. Gross*, --- U.S. ----, 135 S.Ct. 2726, 2732-33, 192 L.Ed.2d 761 (2015) (citation and internal marks omitted). Arthur's present legal theory would throw that principle out the window, effectively saying that the State of Alabama is forbidden to execute him at all where it is aware that its method causes pain and suffering, even though the defendant has failed to identify any readily available alternative method that might alleviate such pain and suffering. Arthur is effectively calling for erasure of the entire *Glossip*/*Baze* framework, based on nothing more than a cursory allegation of "actual knowledge" by the State. From a factual standpoint, Arthur has alleged no facts supporting a plausible inference that Alabama's lethal-injection protocol was (to cite from the same concurring opinion on which Arthur relies) "*designed* to inflict torture as a way of enhancing a death sentence … [or] *intended* to produce a penalty worse than death." *Baze v. Rees*, 553 U.S. 35, 101-02, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) (Thomas, J., concurring). At best, plaintiff's factual allegations may support a plausible inference that the State of Alabama's lethal injection protocol may not function in a pain-free or even error-free manner, but that no one (especially not Arthur, despite five years of prior litigation and extensive discovery on the subject) has identified any readily available alternative means by which the State of Alabama might carry out his death sentence in a manner that substantially reduces the risk of severe pain. This is not the kind of gratuitous infliction of pain that Justice Thomas was referring to in his *Baze* concurrence. Thus, Arthur has identified neither facts nor law that Alabama's lethal-injection protocol (which has been intensely litigated by Arthur and other Alabama death-row inmates in recent years) is "[t]he evil the Eighth Amendment targets." *Id.* at 102. After all, the "evil" identified by Arthur – the State's use of midazolam in a three-drug protocol – has been described by the U.S. Supreme Court not as a sadistic medieval instrument of torture intended to inflict pain for the sake of pain or to produce a penalty worse than death, but instead as a pain-reducing safeguard approved by many federal courts as a means of rendering the inmate insensate to pain. *See Glossip*, 135 S.Ct. at 2739-40 ("numerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride"). Therefore, even if the Court were to reach the merits (which it does not), it would conclude that Arthur's claims are meritless because he has identified neither facts nor law that might plausibly allow him to circumvent the *Glossip*/*Baze* requirement (which he
(Continued)

## III.  Conclusion.

For all of the foregoing reasons, the Complaint is **dismissed with prejudice** on the separate and independent grounds of res judicata and the special equitable principles governing eleventh-hour method-of-execution challenges brought by death row inmates.  In light of this determination, plaintiff's Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction and Request for an Emergency Hearing (doc. 5) is **denied** as **moot**.  A separate judgment will enter.[10]

DONE and ORDERED this 18th day of May, 2017.

s/WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

has previously tried and failed to meet in many years of litigation) that he identify a "feasible, readily available alternative method of execution that would substantially reduce the risk of an unconstitutional level of pain."  *Grayson*, 2016 WL 7118393, at *6.  He has pleaded no facts plausibly suggesting that Alabama designed its lethal injection protocol as a means of inflicting gratuitous pain or torture on the condemned.

[10]  In what appears to be an afterthought (because the facts and reasoning of such a claim are not addressed in any meaningful way in the 14 pages of his Complaint preceding Count Two), Arthur has tacked on a Fourteenth Amendment Equal Protection claim as Count Two of his Complaint.  Arthur posits that "[d]efendants' failure to adhere to Alabama's purported safeguard burdens Mr. Arthur's right to Equal Protection."  (Doc. 1, ¶ 56.)  The factual basis of this claim is, apparently, Arthur's contention that there was "a significant deviation from the ADOC's protocol" in Ronald Smith's execution on December 8, 2016 when ADOC injected him with the second and third drugs despite Arthur's belief that Smith "was not insensate."  (*Id.*, ¶ 54.)  However, Arthur concedes in the same pleading that, following the Smith execution, defendant Dunn stated, "we do know we followed our protocol.  We are absolutely convinced of that."  (Doc. 1, ¶ 39.)  The fundamental problem with Arthur's equal protection claim is that "[t]o state an equal protection claim, [Arthur] must show that the State will treat him disparately from other similarly situated persons."  *DeYoung v. Owens*, 646 F.3d 1319, 1327 (11th Cir. 2011).  Arthur does not identify any facts raising a plausible inference that he will be treated any differently than any other Alabama death row inmate facing execution in the future.  Thus, even if Count Two were not procedurally barred on grounds of laches / equitable principles (which it is), this claim would be properly dismissed on the merits for want of any plausible factual allegation in the Complaint that the State will treat Arthur disparately from other similarly situated persons, which is a cornerstone of an equal protection claim.